O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DOUGLAS M. C.,

        Plaintiff,

   v.

ANDREW M. SAUL, Commissioner
of Social Security,

        Defendant.

Case No. 2:20-CV-04362-KES

MEMORANDUM OPINION AND
ORDER

**I.**

**BACKGROUND**

Plaintiff Douglas M. C. ("Plaintiff") worked as corporate archive representative for Warner Brothers Studios from 2001 until he was laid off in November 2014. Administrative Record ("AR") 128–29, 281–82. On October 30, 2014, he obtained a spinal MRI and shortly thereafter retained an attorney to pursue a workers' compensation claim. AR 862–63, 870. In August 2015, he underwent arthroscopic right hip surgery to repair a torn labrum. AR 462, 534, 885, 916. By June 2016, his only medication for back or hip pain was over-the-counter ibuprofen. AR 873.

In October 2016, Plaintiff applied for Title II disability benefits alleging an onset date of November 5, 2014, with a last date insured ("LDI") of December 31, 2020. AR 240–43, 278. On January 3, 2019, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified along with a vocational expert ("VE"). AR 123–40. On February 8, 2019, the ALJ issued an unfavorable decision. AR 21–29.

The ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar spine and degenerative joint disease of the hip." AR 23. The ALJ determined that despite these impairments, Plaintiff had the residual functional capacity ("RFC") to perform light work if limited to occasional postural activities and exposure to environmental hazards. AR 24. Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could work as a small products assembler, electrical assembler, and inspector/hand packager. AR 28, 138. The ALJ concluded that Plaintiff was not disabled. AR 29.

## II.

## ISSUES PRESENTED

Issue One: Plaintiff frames his first issue as whether the ALJ's RFC assessment is supported by substantial evidence. (Dkt. 22, Joint Stipulation ["JS"] at 4.) In his briefing, however, he argues that the ALJ violated the treating physician rule, 20 C.F.R. § 404.1527(c)(2), by giving greater weight to the opinions of "the non-examining, non-treating state agency reviewing physicians over the opinions of treating and examining physicians." (Id.) Plaintiff does not suggest how his RFC should be different, except to argue that it should align with opinions from Dr. Schwarz (who treated Plaintiff through his workers' compensation claim) or Dr. Alban (the workers' compensation qualified medical examiner ["QME"]). (Id. at 5–6.) The Court, therefore, considers whether the ALJ erred in weighing the medical opinion evidence.

Issue Two:  Whether the ALJ erred in discounting Plaintiff's subjective symptom testimony.  (Id. at 4.)

### III.

### SUMMARY OF THE RELEVANT MEDICAL EVIDENCE

• October 30, 2014: An MRI of Plaintiff's lumbar spine showed no or mild loss of disc height with no other remarkable findings.  AR 862–63.

• February 2, 2015: Orthopedist Charles Schwarz, M.D., conducted an initial evaluation for Plaintiff's worker's compensation claim.  AR 510.  At that time (i.e., several months into Plaintiff's claimed period of disability), Plaintiff reported "no specific problems with activities of daily living" or "physical activity."  AR 512. He had a normal gait, and straight-leg raising tests were negative bilaterally.  AR 513–14.  Dr. Schwarz determined Plaintiff had suffered a lumbar spinal sprain due to 13 years of "repetitive heavy" work performed at Warner Brothers.  AR 514. Dr. Schwarz opined that Plaintiff was "temporarily totally disabled" from such work.  AR 514.

• February 20, 2015–August 22, 2016: Dr. Schwarz wrote periodic, two-page "Primary Treating Physician Progress Reports."  AR 447–507.  He continued to opine that Plaintiff was "temporarily totally disabled" from his job at Warner Brothers, but his treatment plan during these many months was for Plaintiff to continue over-the-counter pain medication, home exercise, and physical therapy. See, e.g., AR 448, 452, 455.

• February 4, 2015: Treating physician Laurie A. Mortara, M.D., wrote a progress note documenting Plaintiff's health complaints.  She noted that Plaintiff's blood sugar was "really under control," his restless leg syndrome had dramatically improved with "methadone at low dose," and he was otherwise reporting "no problems."  AR 546.  The progress note says nothing about hip pain or back pain.

AR 546–49.  Dr. Mortara also noted that Plaintiff had "left Warner Brothers; now runs a car lot."[1]  AR 546.

    • June 22, 2015: Plaintiff saw treating orthopedist Farhad John Hajaliloo, M.D., to discuss right hip pain.[2]  Plaintiff told Dr. Hajaliloo that he had been a "semi-pro soccer player" years ago, and while playing soccer in 2014 at a "high competitive level," he "felt a pop" when kicking the ball and had experienced right hip pain since.  AR 544, 911; see also AR 848 (describing right hip and "back soreness" in July 2014 as soccer-

related).  He rated his pain "2–3/10 daily" and "9/10 when he is active or working out."  AR 544.  He did "personal training for 6 months," but that did not resolve his pain.  AR 544.  He wanted a second opinion about returning to play soccer.  AR 544.  Dr. Hajaliloo ordered an MRI that showed "moderate degenerative arthritic changes" to the right hip joint, degenerative disc disease in the lumbar spine, bursitis, and other findings.  AR 915.

    • August 10, 2015: Plaintiff had arthroscopic surgery to repair a right hip labrum tear.[3]  At his August 3, 2015, pre-op appointment, he reported that he "has been able to play competitive soccer until recently due to hip; but can walk and do stairs w/o chest pain or shortness of breath."  AR 536.  He had a normal gait.  AR 538.  A week after his surgery, Plaintiff was ambulating with a "minimal" limp.

---

[1] At the hearing, Plaintiff explained that he had acquired a dealer's license, an office, and two parking spaces, and he "thought maybe [he] could do that" job and have "a bit of fun" with it, but ultimately he "couldn't do it.  Too much stress." AR 136.

[2] Drs. Mortara and Hajaliloo both work out for Memorial Care Medical Group in its Long Beach location.  E.g., AR 528.

[3] The record indicates that Plaintiff's surgery took place at Surgery Center of Long Beach ("SCLB") (AR 534), but the medical records from SCLB are not included in the AR.

AR 532.  He reported doing "very well," feeling "great," and taking only Advil for pain.  AR 532.

• October 19, 2015: Dr. Hajaliloo noted that Plaintiff was "doing very well" after his right hip surgery and "progressing with his activities," although he had not yet resumed playing competitive soccer.  AR 530–31, 921.

• May 3, 2016: Per Dr. Mortara, Plaintiff displayed a normal gait.  AR 526.

• June 21, 2016: Joseph B. Alban, M.D., wrote a QME report for Plaintiff's worker's compensation claim.  AR 869.  He noted Plaintiff's complaints of lower back pain and right hip pain "since 2009 or 2010."  AR 869–70.  Plaintiff reported that Dr. Hajaliloo had "advised a possible right hip replacement surgery in the future but [Plaintiff] wants to put it off as long as possible."  AR 871.  Plaintiff reported that he "tries to walk as much as he can, but cannot walk for very long because of his lower back pain."  AR 872.  He had tried using a lumbar support brace, ice packs, and TENS unit, with "slight" or no benefit.  AR 873.  He was taking prescription medication for high blood pressure, high cholesterol, and diabetes, but none for pain or arthritis.  AR 873.  He was still able to drive.  AR 871.  Dr. Alban reviewed Plaintiff's prior treating records and MRIs.  AR 874–81.  Unlike Dr. Mortara a month earlier, Dr. Alban observed an abnormal "Trendelenburg" gait.[4]  AR 882.  Dr. Alban ultimately found that Plaintiff had "advanced degenerative joint disease" affecting his right hip and "disc degeneration in the lumbar spine."  AR 885.  Dr. Alban assessed, "At the present time, [Plaintiff] would be capable of performing light duties consisting of semi-

---

[4] "Trendelenburg gait, named after Friedrich Trendelenburg, is an abnormal gait, [which is] caused by weakness or ineffective action of the gluteus medius muscle and the gluteus minimus muscle."  <https://en.wikipedia.org/wiki/Trendelenburg_gait> (last viewed May 13, 2021).

5

sedentary work."[5]  AR 886.  He further assessed that Plaintiff should receive "medications and physical therapy" to treat his condition.  AR 886.

   • August 4, 2016: Dr. Alban wrote a short follow-up evaluation after reviewing a July 2016 lumbar MRI.  AR 932–35.  He opined that Plaintiff's low back pain could be treated with physical therapy with "the option for a lumbar epidural steroid injection."  AR 932.  He further opined that Plaintiff's "condition is expected to improve with further treatment …."  AR 932.

   • September 8, 2016: In response to Plaintiff's complaints of back pain, Dr. Hajaliloo reviewed the July 2016 lumbar spine MRI with Plaintiff that showed a degenerated disc at the L4-5 level but no evidence of herniation or impingement.  AR 520–21.

   • February 9, 2017: Dr. Mortara noted that Plaintiff was "back playing soccer" despite ongoing hip and back pain, and he had a normal gait.[6]  AR 601, 603.  At the time, Plaintiff was taking only "Advil occasional" and "methadone for restless legs" as pain medications.  AR 601–03.  Dr. Mortara suggested adding Celebrex.  AR 602; see AR 628 (reporting later on June 16, 2017, "He does get relief with the Celebrex …").

   • February 23, 2017: State agency consultant C. Scott, M.D., opined that Plaintiff suffered from spinal disorders and osteoarthritis.  AR 146.  Dr. Scott

---

   [5] In the context of California workers' compensation claims, "semi-sedentary work" means that the individual "can do work approximately 50% of the time in a sitting position, and approximately 50% of the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting."  State of California, Dep't of Indus. Relations, Div. of Workers' Comp., Schedule for Rating Permanent Disabilities 2-19 (Apr. 1997), available at <https://www.dir.ca.gov/dwc/pdr1997.pdf> (last viewed May 13, 2021).

   [6] When asked at the hearing it he had returned to playing soccer, Plaintiff said, "No, I tried to kick a ball around," but after kicking a ball for three minutes, he was "in pain for a week," so he does not play soccer.  AR 136.

determined that Dr. Schwarz's August 22, 2016 opinion of temporary total disability (AR 447–49) was "not supported by other medical evidence in file." AR 147. Dr. Scott opined that Plaintiff could do light work with some additional limitations. AR 148–49.

• March 27, 2017: On reconsideration, state agency consultant J. Berry, M.D., reviewed records from Plaintiff's most recent physical examination with Dr. Mortara in February 2017 (AR 601–04) and characterized them as "unremarkable." AR 156. Dr. Berry, too, found that Dr. Schwarz's August 22, 2016 opinion was "without substantial support from the medical source who made it, which renders it less persuasive." AR 159. Dr. Berry affirmed the assessment of an RFC for light work with limitations on postural activities. AR 157–58.

• April 3, 2017: Dr. Schwarz completed a medical source statement ("MSS") form. AR 620–23. He opined that due to hip and spinal problems, Plaintiff could only walk 1–2 blocks without "severe pain." AR 621. In a typical 8-hour workday, Plaintiff could only sit or stand/walk for less than 2 hours, and he would need unscheduled 30-minute breaks more than once per week due to pain and numbness. AR 621. Dr. Schwarz indicated that "psychological conditions" and "emotional factors" were not contributing to Plaintiff's functional limitations. AR 620–21. Nevertheless, he opined that Plaintiff was incapable of "normal" work and could only do "low stress" work; even if limited to "simple" work, Plaintiff would be off task 25% of the time or more and miss more than 4 days of work per month. AR 623.

• June 16, 2017: Treating physician Mark J. Buchfuhrer, M.D., noted that Plaintiff continued to experience "significant problems with his right hip" but still engaged in "Exercise: Occasional." AR 628. This note says nothing about lower back pain and expressly states that other than his right hip, Plaintiff displayed "no new limitation in motion, muscle or joint pain, or muscle weakness" with an "unchanged gait." AR 629. Dr. Buchfuhrer noted that Plaintiff "has not been

eager to take anti-inflammatories such as Celebrex," but he "encouraged [Plaintiff] to take his Celebrex a few days in a row when he has problems with arthritis in his right hip …." AR 628, 630.

• January 17, 2018: Plaintiff reported "walking daily," and he was "negative for back pain" with a "normal" gait. AR 1014, 1016–17. He was still prescribed Celebrex. AR 1016; see AR 1024 (still "walks a lot" in July 2018).

## IV.

## DISCUSSION

A.   **ISSUE ONE: The ALJ's Evaluation of Medical Opinion Evidence.**

1.   **Legal Standards.**

An ALJ must consider all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); accord Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(3)).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the claimant's] case record."[7]  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017; see also 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).  Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming that a federal court "review[s] the decision of the ALJ for substantial evidence").  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Bayliss, 427 F.3d at 1216; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.").  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Trevizo v. Berryhill, 871

---

[7] For claims filed on or after March 27, 2017, the Agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Because Plaintiff filed his claim in October 2016, AR 240–43, the "treating physician rule" applies to his case.

F.3d 664, 675 (9th Cir. 2017) (citation omitted).  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

**2.    Summary of Relevant Administrative Proceedings.**

The ALJ gave "great weight" to the opinions of Drs. Scott and Berry. AR 26.  The ALJ gave "less weight" to Dr. Alban's QME report "because he did not propose any specific functional limitations that would prevent [Plaintiff] from working and did not provide an opinion on what [Plaintiff] could still do despite [his] impairments."  AR 25–26.  The ALJ gave "little" weight to Dr. Schwarz's MSS, finding the limitations imposed "too stringent."  AR 26.  In support, the ALJ noted that Dr. Schwarz "primarily summarized [Plaintiff's] subjective complaints, diagnoses, and treatment, but he did not provide medically acceptable clinical or diagnostic findings to support the functional assessment."  AR 26.  The ALJ further found that the MSS was "inconsistent with the medical evidence as a whole already discussed above in this decision, which shows [Plaintiff] is conservatively treated with medications and therapy."  AR 26.  The ALJ also explained that opinions about whether Plaintiff was "temporarily totally disabled" for purposes of workers' compensation law did not translate into eligibility for federal disability benefits.  AR 25.

**3.    Analysis of Claimed Error.**

Plaintiff argues that Dr. Schwarz's MSS was entitled to "great weight" because he had a long treating relationship with Plaintiff, he is an orthopedic specialist, and his opinions are consistent with the other medical evidence of record.  (JS at 5.)  Plaintiff further argues that the ALJ erred in discounting Dr. Alban's QME report, because "Dr. Alban rendered limitations in workers' compensation terminology," and the "ALJ did not recognize the significance of these terms of art."  (Id. at 6.)

10

First, Dr. Schwarz's MSS and Dr. Alban's QME report contradict each other. Dr. Schwarz opined that Plaintiff would miss work so often, he could not be employed. AR 623; see AR 138 (VE's testimony). Dr. Alban opined that Plaintiff could be employed doing "light duties." AR 886. Thus, neither is entitled to controlling weight under the treating physician rule.

Second, the ALJ gave specific, legitimate reasons supported by substantial evidence for rejecting Dr. Schwarz's extreme MSS. Dr. Schwarz opined that Plaintiff could spend less than four hours/day sitting, standing, or walking, suggesting that Plaintiff must spend the remainder of each day lying down. AR 621. He opined that Plaintiff's right hip and back pain were so great that Plaintiff could not focus even on simple tasks more than 75% of the time and would have excessive absenteeism. AR 623. The ALJ correctly found that the work-preclusive limitations posited Dr. Schwarz were inconsistent with his own conservative treatment recommendations, which did not include prescription pain medication or a referral for specialized pain management or surgical consultations. See, e.g., AR 448, 452, 455. The ALJ also correctly found that Dr. Schwarz failed to indicate in the MSS or his progress notes that he had administered any tests of Plaintiff's focus or concentration on which he based his MSS opinions. Even as to his opinions about how long Plaintiff could walk or stand, Dr. Schwarz's findings of lumbar strain and mild/moderate degenerative changes affecting Plaintiff's back and right hip are not so severe as to support an opinion that Plaintiff must spend most of his time lying down. The medical evidence shows that Plaintiff did not tell Dr. Schwarz that pain prevented him from doing daily activities (AR 512) and did not complain of back pain after 2016 (AR 520–21, 601, 1014). After his arthroscopy in 2015, his right hip pain was treated conservatively (AR 601–02), improving with Celebrex (AR 628). Per medical progress notes, he improved enough to return to playing soccer in 2017 (AR 601) and walking daily in 2018 (AR 1014, 1024). Apparently because Plaintiff could still engage in these

11

activities, his hip pain was not so severe that he was unwilling to defer hip
replacement surgery.  AR 871.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041
(9th Cir. 2008) (incongruity between treating physician's opinion and his treating
records is a specific and legitimate reason for rejecting physician's opinion); Hanes
v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (" the ALJ reasonably relied on
his findings regarding [the claimant's] daily activities, her conservative treatment,
and her positive response to that treatment to conclude that the assessments of [the
claimant's physicians] were inconsistent with the objective evidence in the
record").

     As for Dr. Alban, his opinion was quite similar to that of the state agency
consultants with a slight difference as to how long Plaintiff could walk or stand
(i.e., about four hours versus six hours).  Dr. Alban also expressed that his opinion
was limited to "the present time" (AR 886) and that Plaintiff's condition "[was]
expected to improve with further treatment."  AR 932.  The ALJ did not reject Dr.
Alban's QME report, but gave it less weight because it was less comprehensive
than the opinions by the state agency consultants.  AR 25–26.

     Plaintiff has not demonstrated legal error.  Plaintiff told medical sources that
he was "walking daily" or "walking a lot" and even playing soccer.  AR 601–02,
1014, 1024.  Except for a brief period after Plaintiff's August 2015 surgery, only
his workers' compensation QME, who never heard the soccer-related history of his
injuries, ever observed an abnormal gait.  Compare AR 882, with AR 513, 526,
538, 601–03, 1016–17.  See AR 532 (noting a "minimal" limp a week after the
August 2015 surgery).  This evidence aligns better with the opinions of the state
agency consultants, justifying the ALJ's decision to give less weight to Dr. Alban's
opinions.  Because Drs. Scott and Berry "reviewed all medical evidence available
at the time of the examinations, and their opinions were consistent with other
objective and opinion evidence in [Plaintiff's] record," their opinions were "also
supported by substantial evidence."  Sisk v. Saul, 820 F. App'x 604, 605 (9th Cir.

2020); see Ahearn, 988 F.3d at 1118 (ALJ did not err in adopting assessments of nonexamining state agency consultants because their assessments "were supported by other evidence in the record and were consistent with it") (citation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (contrary opinion of a nonexamining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record); accord Dingman v. Saul, 830 F. App'x 247, 248 (9th Cir. 2020); see also 20 C.F.R. § 404.1527(c)(3) ("because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions"); SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

B. **ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

    1. **Legal Standards.**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

1          **2.      Summary of the ALJ's Reasoning.**

2          The ALJ summarized Plaintiff's hearing testimony.  AR 24–25.  The ALJ

3    noted that the focus of Plaintiff's testimony was disabling pain caused by

4    degenerative disc disease of the lumbar spine and degenerative joint disease

5    affecting his right hip.  AR 26.  Plaintiff testified that "physically I can't really do

6    much of anything."  AR 129.  He did not "really do any activities" except he

7    "might walk … although it's painful."  AR 135.  He testified that he could walk for

8    about a half hour and sit for about a half hour before needing to get up.  AR 130–

9    31.  If he sat for 10 minutes, however, he would fall asleep due to exhaustion.  AR

10   135.  He had a hard time doing "the day stuff" because he was "constantly in

11   pain."  AR 132.  Because of his medications, he had "mood swings" and "can't

12   think straight."  AR 134.

13         The ALJ concluded that Plaintiff's claimed functional limitations due to pain

14   were "not as significant as alleged by [Plaintiff]."  AR 26.  The ALJ based this

15   conclusion on (1) inconsistency between Plaintiff's statements and "the medical

16   evidence and other evidence of record"; (2) Plaintiff's improvement with

17   conservative treatment; and (3) inconsistency with Plaintiff's reported activities.

18   AR 25–26.  While inconsistencies with the objective medical evidence are factors

19   that the ALJ *may consider* when evaluating subjective symptom testimony, they

20   cannot be the *sole* ground for rejecting a claimant's subjective testimony.  Burch v.

21   Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  The Court, therefore, considers the

22   ALJ's second and third reasons.

23                  a.      Improvement with Conservative Treatment.

24         Plaintiff argues that his treatment cannot be fairly characterized as

25   conservative.  (JS at 14.)  The relevant question is whether his treatment was more

26   conservative than one would expect given his allegations of disabling pain.  See

27   Tommasetti, 533 F.3d at 1039–40 (ruling that the failure to "seek an aggressive

28   treatment program [or] an alternative or more-tailored treatment program" for

claimant's "all-disabling" pain supported the ALJ's adverse subjective statement finding); Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) (treating alleged severe impairments with over-the-counter medications constitutes a "significant and substantial reason[ ]" for discounting a claimant's subjective symptom statements); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where claimant's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Here, where there are long periods of time when Plaintiff was not taking any prescription pain medication beyond low dose methadone for his restless leg syndrome, and where his doctors recommended physical therapy without other pain management strategies, the ALJ did not err in finding that the nature of his treatment was inconsistent with the severity of his allegations. The ALJ saw "little to no mention of lumbar complaints since 2016" (AR 26, apparently referring to AR 520–21), and Plaintiff has cited none in his brief. Plaintiff denied any back pain in 2018. AR 1016–17.

Plaintiff faults the ALJ for cherry-picking the evidence by citing an October 2015 note stating that Plaintiff was "doing well" after his arthroscopic surgery. (JS at 14, citing AR 25, 531.) The full context of the note, however, is that Plaintiff is "progressing with his activities" with a goal of returning to play competitive soccer (AR 531), something the ALJ could certainly consider inconsistent with Plaintiff's claims of disabling pain. Moreover, the October 2015 note is part of a pattern of improvement. In June 2016, Plaintiff was willing to postpone further surgical intervention to address hip pain. AR 871. In February 2017, Plaintiff was taking only over-the-counter pain medication and had returned to playing soccer. AR 601. In June 2017, he was encouraged to take Celebrex daily to treat his hip pain after reporting that it brought some improvement. AR 628–30. By June 2018, Plaintiff was walking "a lot" and denied back pain. AR 1014–17.

b. Inconsistency with Reported Activities.

Plaintiff faults the ALJ for "isolating" the February 2017 note that Plaintiff had returned to playing soccer. (JS at 15, citing AR 601.) Plaintiff sought to explain this statement by testifying that he had merely tried once to kick the ball around for three minutes. (Id., citing AR 136.)

The ALJ did not improperly consider this notation in isolation. The record shows that Plaintiff played soccer at a high, competitive level until a few months before Warner Brothers laid him off (AR 544); that he initially reported his injuries as soccer-related (AR 848); and that he told his regular treating doctors he wanted to return to playing soccer, so much so that he was willing to seek out a second opinion after being advised to stop playing soccer (AR 544). This context makes the February 2017 note by the same treating doctor that Plaintiff had, in fact, returned to playing soccer believable. In contrast, Plaintiff told his workers' compensation doctors that he was injured at work. Compare AR 510, 512 (Dr. Schwarz described how Plaintiff "sustained an injury to his lower back as a result of his employment" and denied earlier or subsequent back injuries from other causes), and AR 870 (Dr. Alban described how Plaintiff "in 2009 or 2010, while at work … felt his lower back and right hip were being overused;" he "filed a continuous trauma claim from November 6, 2014 through November 15, 2014"), with AR 848, 911 (describing back soreness and right hip pain as soccer-related). Plaintiff would not have qualified for workers' compensation benefits had his injury been deemed soccer-related. This discrepancy justified the ALJ disbelieving his attempt at the hearing to explain away the February 2017 note.

# V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner shall be AFFIRMED.  Judgment shall be entered consistent with this order.

DATED:  May 18, 2021

_Karen E. Scott_

KAREN E. SCOTT
United States Magistrate Judge